JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**          **Date:  April 11, 2016**
                  CV-11-08605-MWF-FFM
                  CV-11-08622-MWF-PLA

Title:    Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

Present:    The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

|  |  |
|---|---|
| Relief Deputy Clerk:<br>Cheryl Wynn | Court Reporter:<br>Not Reported |
| Attorneys Present for Plaintiff:<br>None Present | Attorneys Present for Defendant:<br>None Present |

**Proceedings (In Chambers):**   ORDER RE MOTIONS TO DISMISS
                    [No. 11-8604: 98, 99] [No. 11-8605: 106]
                    [No. 11-8622: 92]

Before the Court are three Motions filed in these related actions:

- Auction House Defendants' Joint Motion to Dismiss the Complaints (the "Joint Motion"), filed on February 1, 2016.  (No. 11-8604: 99; No. 11-8605: 103).  Plaintiffs submitted an Opposition to the Joint Motion on February 22, 2016, followed by the Auction Defendants' Joint Reply on March 7, 2016.  (No. 11-8604: 101, 106; No. 11-8605: 106, 109).

- Defendant Sotheby's Motion to Dismiss Class Action Complaint under Rule 12(b)(1) (the "Sotheby's Motion"), filed on February 1, 2016.  (No. 11-8604: 98).  Plaintiffs filed an Opposition on February 22, 2016, and Defendant Sotheby's Reply followed on March 14, 2016.  (No. 11-8604: 104, 107).

- Defendant eBay's Motion to Dismiss Plaintiff's Complaint (the "eBay Motion"), filed on February 1, 2016.  (No. 11-8622: 92).  Plaintiffs filed an Opposition on February 22, 2016, and Defendant eBay's Reply followed on March 7, 2016.  (No. 11-8604: 92, 99).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**                **Date:  April 11, 2016**
              CV-11-08605-MWF-FFM
              CV-11-08622-MWF-PLA

Title:      Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

Having considered the papers filed on the Motions and the parties' arguments at the hearing held on **March 21, 2016**, the Court rules as follows:

The Joint and eBay Motions are **GRANTED** to the extent they argue that the California Resale Royalty Act ("CRRA") is preempted under the Copyright Act of 1976.  The CRRA stands in conflict with the first sale doctrine codified in 17 U.S.C. § 109(a), which prohibits copyright holders from exercising downstream distribution control of their products.  Because the CRRA regulates secondary transactions of fine art by permitting artists to recover unwaivable royalties from resellers, the state law frustrates the purpose of § 109(a) and disrupts the equilibrium of the Copyright Act.  Plaintiffs' claims, moreover, are independently preempted under the express preemption clause of 17 U.S.C. § 301(a) because they are not qualitatively different from garden-variety copyright claims.

The eBay Motion is also **GRANTED** to the extent it contends that Defendant eBay is not a proper Defendant under the CRRA.  Plaintiffs' allegations that Defendant eBay acted as a seller or a seller's agent are implausible in light of the functionality of Defendant eBay's website.  Because the CRRA imposes liability on only sellers of fine art or their agents, Plaintiffs' claims against Defendant eBay are deficient.

The Joint and eBay Motions are **DENIED**, however, to the extent they claim that the CRRA violates the Takings Clause of the Fifth Amendment and that Plaintiffs' allegations against Defendants Sotheby's and Christie's fail under Rule 8.  As to the Takings Clause, the property interests in royalties belong to Plaintiffs, not to Defendants or their clients.  There can be no "takings" under these circumstances.  And as to Plaintiffs' allegations, the Complaints plead sufficient plausible facts to put Defendants Sotheby's and Christie's on notice of their misconduct.

The Sotheby's Motion is **DENIED**.  The jurisdictional arguments Defendant Sotheby's makes are so intertwined with the merits of these actions that they are not appropriately adjudicated under Rule 12(b)(1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**          **Date:  April 11, 2016**
    CV-11-08605-MWF-FFM
    CV-11-08622-MWF-PLA

Title:  Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

## I. **BACKGROUND**

At the core of these actions is the disputed validity of the CRRA.  The CRRA requires the seller of fine art to pay the artist a five percent royalty as long as "the seller resides in California or the sale takes place in California."  Cal. Civ. Code § 986(a).  The right to royalties may not be limited through contract, but it may be expanded beyond the five percent of the sale proceeds.  *Id.*  The term "fine art" is defined as "an original painting, sculpture, or drawing, or an original work of art in glass."  *Id.* § 986(c)(2).  Some sales of fine art are excluded from the royalty requirement, such as those for less than $1000.  *Id.* § 986(b)(2).

The CRRA applies not only to sellers but also their agents.   Cal. Civ. Code § 986(a)(1).  When an art gallery, for instance, sells a collector's painting at an auction, it must "withhold 5 percent of the amount of the sale, locate the artist and pay the artist." *Id.*  If the agent is unable to locate the artist within ninety days, it must pay the royalty to the California Arts Council.  Cal. Civ. Code § 986(a)(2).  And if the agent fails to comply, the artist may sue to recover the royalty and reasonable attorneys' fees.  Cal. Civ. Code § 986(a)(3), (7).

Plaintiffs allege that Defendants—two auction houses and an online retailer— have failed to comply with the CRRA as agents for various art sellers.  All three Complaints are based on materially identical allegations and plead putative class actions on behalf of artists whose work Defendants allegedly sold without paying royalties.  Each proposed class is divided into two subclasses:  one covering sales that occurred within three years of the filing of these actions, and the other covering older sales that did not provide sufficient information to ascertain whether the artists were owed royalties.  Plaintiffs seek to obtain royalties, punitive damages, attorneys' fees, and injunctive relief.  (*See* Sotheby's Complaint ¶¶ 14-25 (No. 11-8604: 1); Christie's Complaint ¶¶ 15-26 (No. 11-8605: 1); eBay Complaint ¶¶ 13-24 (No. 11-8622: 1)).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**             **Date:  April 11, 2016**
　　　　　　CV-11-08605-MWF-FFM
　　　　　　CV-11-08622-MWF-PLA
Title:　　　Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

　　　　The parties are no strangers to this Court.   Four years ago, the Court (the Honorable Jacquelyn H. Nguyen, then-United States District Judge) granted Defendants' first round of Motions to Dismiss, concluding that the CRRA's regulation of sales outside California violated the dormant Commerce Clause of the United States Constitution.  (Order Granting Joint Motion to Dismiss at 19 (No. 11-8604: 43)).  Plaintiffs appealed the ruling to the Ninth Circuit, and after oral argument before the three-judge panel, the majority of active circuit judges voted to hear the cases en banc.  (Order from the Ninth Circuit at 1 (No. 11-8604: 73)).  The en banc panel affirmed the Court's holding but determined that the unconstitutional portion of the CRRA—the portion applying to out-of-state sales—could be severed from the remaining provisions.  *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323-26 (9th Cir. 2015) (en banc).  Plaintiffs then unsuccessfully petitioned the Supreme Court for a writ of certiorari.  *See Sam Francis Found. v. Christies, Inc.,* 136 S. Ct. 795 (2016).

　　　　The parties now return to adjudicate Plaintiffs' remaining claims concerning art sold in California.  Because the Joint Motion raises the most significant arguments common to all three actions, it is with that Motion that the Court begins its analysis.

## II.　**JOINT MOTION**

　　　　In ruling on a motion under Federal Rule of Civil Procedure 12(b)(6), the Court follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (citation omitted).  "All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff."  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008) (holding that a plaintiff had plausibly stated that a label referring to a product containing no fruit juice as "fruit juice snacks" may be misleading to a reasonable consumer).  The Court need not accept as true, however, "[t]hreadbare recitals of the elements of a cause of action,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**          **Date:  April 11, 2016**
          CV-11-08605-MWF-FFM
          CV-11-08622-MWF-PLA
Title:      Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

supported by mere conclusory statements . . . ."  *Iqbal*, 556 U.S. at 678.  The Court, based on judicial experience and common-sense, must determine whether a complaint plausibly states a claim for relief.  *Id*. at 679.

Defendants argue that Plaintiffs do not and cannot state a viable claim for relief because (1) the CRRA is preempted under the Copyright Act of 1976; (2) the CRRA violates the Takings Clause of the Fifth Amendment; and (3) Plaintiffs' allegations are implausible.  (Joint Motion at 2-3).  Defendants also claim that punitive damages cannot be recovered under the CRRA and that the Estate of Robert Graham is not a proper Plaintiff.  The Court analyzes each of these contentions in turn.

### A.      <u>Preemption under the Copyright Act</u>

Two types of preemption are relevant here:  conflict preemption and express preemption.  Conflict preemption applies "when a state law actually conflicts with federal law or when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the federal law."  *Montalvo v. Spirit Airlines*, 508 F.3d 464, 470 (9th Cir. 2007) (holding that a state-law negligence claim was preempted when it concerned aviation safety, a field occupied by the Federal Aviation Act).  Express preemption refers to instances where a "preemption clause" in a federal statute expressly displaces the challenged state law.  *See CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) ("If the statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.").  In analyzing preemption, "'the entire scheme of the [federal] statute must be considered and that which needs must be implied is of no less force than that which is expressed.'"  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) (quoting *Savage v. Jones*, 225 U.S. 501, 533 (1912)) (holding that a Massachusetts state law governing trade with Burma was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**            **Date:  April 11, 2016**
**CV-11-08605-MWF-FFM**
**CV-11-08622-MWF-PLA**

Title:      Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

preempted when "it undermine[d] the intended purpose and natural effect of at least three [provisions of a federal act imposing sanctions on Burma]").

## 1.      Conflict Preemption

In enacting the Copyright Act of 1976, Congress attempted to strike "a difficult balance" between the interests of copyright holders and "the society's competing interest in the free flow of ideas, information, and commerce."  S*ony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 429 (1984) ("[I]t is Congress that has been assigned the task of defining the scope of the limited monopoly that should be granted to authors or to inventors in order to give the public appropriate access to their work product.").  State laws must give way when they disrupt that balance by broadening the scope of the copyright beyond what Congress intended.  *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 152 (1989) (stating, in analogous patent context, that "state regulation of intellectual property must yield to the extent that it clashes with the balance struck by Congress," including when the state law offers "protection to intellectual creations which would otherwise remain unprotected as a matter of federal law").  The CRRA creates that impermissible disruption, Defendants argue, because it "runs headlong" into the "first sale doctrine" codified in 17 U.S.C. § 109(a).  (Joint Motion at 7).  Because the scope of the first sale doctrine is crucial to the parties' dispute, the Court takes time to examine the doctrine's role in modern copyright law.

## a.      *First Sale Doctrine*

The first sale doctrine provides that "once the copyright owner places a copyrighted item in the stream of commerce by selling it, he has exhausted his exclusive statutory right to control its distribution."  *Quality King Distributors, Inc. v. L'anza Research Int'l, Inc.*, 523 U.S. 135, 152 (1998).  "[F]or at least a century the 'first sale' doctrine has played an important role in American copyright law."

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case Nos. CV-11-08604-MWF-FFM**          **Date:  April 11, 2016**
                  CV-11-08605-MWF-FFM
                  CV-11-08622-MWF-PLA

Title:     Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

*Kirtsaeng v. John Wiley & Sons, Inc.*, -- U.S. --, 133 S. Ct. 1351, 1363 (2013).  It has created robust secondary markets by "leaving buyers of goods free to compete with each other when reselling or otherwise disposing of those goods."  *Id*.  In other words, the doctrine has shifted the market power away from copyright holders and toward competition in order to "advantage the consumer."  *Id.*

        Congress first codified the doctrine in the Copyright Act of 1909 and subsequently reaffirmed it in the Copyright Act of 1976.  The relevant provision now reads as follows:

> Notwithstanding the provisions of section 106(3) [providing exclusive rights over copyrighted works], the owner of a particular copy . . . lawfully made under this title . . . is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy.

17 U.S.C. § 109(a).

        The Supreme Court has characterized § 109(a) as having "broad reach" and warned the courts against a "cramped reading" of the statutory language.  *Quality King*, 523 U.S. at 152 (stating that it is not for the courts to extend statutory copyright protections over goods subject to § 109(a)).  What § 109(a) means in simple terms is that the buyers of copyrighted works "are free to dispose of [them] as they wish."  *Kirtsaeng*, 133 S. Ct. at 1355.  This freedom includes the right to resell the goods for whatever price the buyer deems appropriate, without regard to the wishes of the copyright holder.  *See Omega S.A. v. Costco Wholesale Corp.*, 776 F.3d 692, 695 (9th Cir. 2015) ("Application of the first sale doctrine . . . conclusively reaffirms that copyright holders cannot use their rights to fix resale prices in the downstream market."); *see also PNY Techs., Inc. v. SanDisk Corp.,* No. C-11-04689 YGR, 2012 WL 1380271, at *5 (N.D. Cal. Apr. 20, 2012) ("A patent holder may not collect a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**                **Date:  April 11, 2016**
              CV-11-08605-MWF-FFM
              CV-11-08622-MWF-PLA
Title:       Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

'double royalty,' that is, collect a royalty from both a licensee and a purchaser of the licensee's product under the same patent for the same patented product without violating the patent exhaustion doctrine."); *SanDisk Corp. v. Round Rock Research LLC*, No. C 11-5243 RS, 2014 WL 2700583, at *4 (N.D. Cal. June 13, 2014) ("First sale doctrine in copyright is conceptually analogous to patent exhaustion.").

Although Plaintiffs seem to agree with these settled principles, they suggest that the first sale doctrine "does not restrict the copyright holder's right to contractually limit subsequent distribution nor does it preclude a state legislature from enacting legislation pertaining to subsequent distributions."  (Opposition to Joint Motion at 10). That the purchasers of copyrighted goods can agree to limit their commercial conduct through contract is undeniable.  *See United States v. Wise*, 550 F.2d 1180, 1187 (9th Cir. 1977) ("If the vendee breaches an agreement not to sell the copy, he may be liable for the breach but he is not guilty of infringement.").  Such agreements are a common feature of today's economy; they permit copyright holders to exercise control over downstream markets in exchange for a wide variety of contractual benefits to resellers. Indeed, competition could well suffer if resellers were unable to voluntarily permit copyright holders to limit distribution in some ways.

But Plaintiffs err when they analogize limitations on downstream sales imposed by contract to those imposed by state law.  No authority supports the proposition that states can eliminate the first sale doctrine, and imbue copyright holders with unprecedented market power, simply because a reseller can enter into a distribution agreement with the copyright holder.  It is precisely the protection afforded by § 109(a) that permits resellers to gain contractual benefits in exchange for their distribution rights.  Without § 109(a), copyright holders would not need to bargain for downstream control; they would simply sue for copyright infringement as soon as their products entered secondary markets.  Any state laws that conflict with the first sale doctrine, therefore, necessarily transfer market power from resellers to copyright holders.  That

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**              **Date:  April 11, 2016**
                  CV-11-08605-MWF-FFM
                  CV-11-08622-MWF-PLA
Title:      Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

___

transfer disturbs the equilibrium Congress created in the Copyright Act and subjects those state laws to preemption.  Whether the CRRA is such a law is the question here.

**b.      *Preemption of the CRRA***

The CRRA's royalty obligations can be described in two contrasting ways:

It could be argued that the CRRA regulates not the resale of fine art but the proceeds derived from that resale.  Nothing on the face of the statute limits the resellers' ability to dispose of their art collections as they wish—the artists can neither preclude resales nor restrict the secondary market for their art in any meaningful way.  Only after the resale is completed does the CRRA impose a monetary obligation on the reseller, which is akin to a tax on the income derived from a profitable investment.  The CRRA, as this reasoning goes, does not infringe on the first sale doctrine because it does not disturb the balance between the rights of the copyright holders and downstream resellers.

But another interpretation, in the Court's view, is more compelling.  By conferring unwaivable royalty rights on artists, and obligating resellers to identify and locate those artists, the CRRA restricts transactions that § 109(a) intended to leave unrestricted.  In practical terms, the five-percent royalty obligation prevents resellers from procuring the full value of the fine art in the secondary market.  Putting aside the costs of locating the original artist, a California art investor would lose money if she were to resell the art for less than 105% of the original purchase price.  The royalty obligation thus acts as a disincentive for art investors to resell their art, thereby restricting the secondary markets for fine art in California.  That result both undercuts the purpose of the first sale doctrine and inhibits the uniformity Congress sought to achieve by enacting the Copyright Act.

The leading treatises on copyright law agree with the latter analysis.  As Nimmer persuasively explains, the CRRA provides a form of copyright protection called *droit*

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**                **Date:  April 11, 2016**
            CV-11-08605-MWF-FFM
            CV-11-08622-MWF-PLA

Title:      Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

─────────────────────────────────────────────────────────────────

*de suite*, or the right to "follow" or participate in the resale of the copyrighted goods.  2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 8C.04[A][1] (2015). This right has been codified in the copyright laws of many nations, including France, Germany, and Italy.  *Id.  Droit de suite* is intended to correct a disparity between authors, who derive their income through reproductions of their works, and fine artists, whose primary source of income is the sale of the original, tangible art.  *Id.*  By affording another layer of copyright protection, the resale royalty is thus designed to provide artists with sufficient incentive to create valuable intellectual property.  *Id.*

        But Congress never adopted *droit de suite*.  In fact, just the opposite:  by enacting § 109, Congress intended to keep downstream sales of copyrighted works to be free from restrictions imposed by copyrighted holders.  One treatise has therefore concluded that the CRRA "conflicts with § 109 of the Copyright Act, which generally exhausts the copyright owner's rights with respect to a particular copy once that copy is lawfully distributed."  6 William F. Patry, *Patry on Copyright* § 18:52 (2016). Nimmer has also observed that the CRRA falls "within the subject matter covered by the Copyright Act" and clashes with the purposes of the first sale doctrine.  2 *Nimmer on Copyright*, *supra*, § 8C.04[A][1]-[2].  State laws such as the CRRA could "tinker with the Copyright Act in a variety of damaging ways" and "could ultimately unravel the unitary copyright system so carefully evolved over the years."  *Id*.  "Indeed, if the 'first sale' doctrine does not constitute a restriction on state law, it would mean that the secondhand market in used books could be wiped out by a state law enacted at the behest of book publishers, or at the very least a prohibitive royalty on the sale of used books could be imposed."  *Id*.  Whatever the merits of such a law, one thing is clear:  it is directly contrary to the Copyright Act and § 109(a).  *Id*.

        But while the Court is of the same view as these prominent treatises, the Ninth Circuit adopted a different interpretation of the CRRA over thirty-five years ago in *Morseburg v. Balyon*, 621 F.2d 972 (9th Cir. 1980).  The panel concluded that the materially-identical predecessor of § 109(a), codified in the Copyright Act of 1909, did

─────────────────────────────────────────────────────────────────

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**          **Date:  April 11, 2016**
             CV-11-08605-MWF-FFM
             CV-11-08622-MWF-PLA

Title:       Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

not preempt the CRRA because "[t]echnically speaking [the CRRA] in no way restrict[s] the transfer of art works." *Morseburg*, 621 F.2d at 977.  California has simply created an additional "in personam" right, the panel reasoned, that functions "harmoniously" with federal copyright laws. *Id.* at 977-78 (citing *Goldstein v. California*, 412 U.S. 546, 560 (1973)).  The court analogized the royalty imposed on resellers to taxes imposed on the proceeds from the sales of art. *Id.* at 978.  And although the panel recognized that the CRRA may "influence the duration of a purchaser's holding period of a work of fine art," it did not deem such influences to constitute restrictions on transfers of art. *Id.*  In other words, the panel adopted the first view of the CRRA set forth in the beginning of this section.

Is *Morseburg* still good law?  The Court agrees with Plaintiffs that *Morseburg* is not distinguishable simply because it involved the Copyright of Act of 1909 and not 1976.  Because both Acts codify the same first sale doctrine, the Court cannot disregard *Morseburg*'s reasoning in favor of its own analysis.  In the Court's view, however, recent decisions of the Supreme Court and the Ninth Circuit have so eroded *Morseburg* that it is no longer represents a binding interpretation of the first sale doctrine and the CRRA.

To understand the extent to which *Morseburg* has been undermined, it is first important to examine *Goldstein v. California*, the decision that served as the foundation for *Morseburg*'s reasoning.  *See Morseburg*, 621 F.2d at 977 ("We hold that *Goldstein* governs this case.").  In *Goldstein*, the Supreme Court considered whether the Copyright Act of 1909 preempted a California statute that criminalized the selling of pirated tape recordings.  412 U.S. at 549.  At the time of the Supreme Court's decision, Congress had not extended copyright protection to recordings of musical performances. *Id.* at 562-63.  While the Court recognized that "a conflict could develop if a State attempted to protect that which Congress intended to be free from restraint," nothing indicated that Congress desired musical records "to be free from state control." *Id.* at 566.  The Ninth Circuit used the same reasoning in *Morseburg* to

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case Nos. CV-11-08604-MWF-FFM              Date:  April 11, 2016
              CV-11-08605-MWF-FFM
              CV-11-08622-MWF-PLA
Title:       Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

conclude that the CRRA is a valid regulation because "no hostility toward such a royalty is expressed by the [Copyright] Act." *Morseburg*, 621 F.2d at 978.

But as already discussed, recent precedent teaches that the first sale doctrine does not simply create a void to be filled by state regulations.  Instead, the doctrine embodies a delicate distribution of rights between copyright holders and downstream resellers, "leaving buyers of goods free to compete with each other [in the secondary market]." *Kirtsaeng*, 133 S. Ct. at 1363; *see Quality King*, 523 U.S. at 152 (emphasizing that a copyright holder may not control the downstream distribution of its products under the Copyright Act).  State laws permitting copyright holders to control downstream sales stand as an obstacle to Congress's goal of allowing resellers to dispose of copyrighted goods as they see fit.  The Court is therefore persuaded that, under the view of the first sale doctrine expressed in *Kirtsaeng* and *Quality King*, the Ninth Circuit today would not analogize the CRRA to the state law in *Goldstein*. Indeed, in contrast to a law that merely protects a category of work left unprotected under the Copyright Act, the CRRA encroaches on a subject matter Congress expressly addressed in § 109(a).

With *Goldstein* out of the way, all that remains of *Morseburg* is its determination that the CRRA functions "harmoniously" with the Copyright Act because "technically speaking" the state law does not restrict transfers of art.  621 F.2d at 977.  But that conclusion cannot be reconciled with modern precedent.  The Supreme Court has made clear that § 109(a) should be interpreted not technically (*i.e.*, narrowly) but practically (*i.e.*, broadly).  *Quality King*, 523 U.S. at 137 (emphasizing that § 109(a) has a "broad reach" and warning against "cramped reading" of the statute).  The Court in *Kirtsaeng*, for example, found it "absurd" that "the copyright owner [could] exercise downstream control even when it authorized the import or first sale."  *Kirtsaeng*, 133 S. Ct. at 1366.  "[B]ooksellers, libraries, museums, and retailers," the Court explained, "have long relied on [the protection of § 109(a)]. Museums, for example, are not in the habit of asking their foreign counterparts to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case Nos. CV-11-08604-MWF-FFM             Date:  April 11, 2016
                  CV-11-08605-MWF-FFM
                  CV-11-08622-MWF-PLA
Title:       Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

check with the heirs of copyright owners before sending, *e.g.,* a Picasso on tour." *Id.*
A "permission verifying process" would produce "intolerable consequences" and a
variety of "practical problems" in conflict with § 109(a).  *Id.*

    *Morseburg* did not have the benefit of this reasoning and did not consider the
similar effects of the CRRA on auction houses.  To comply with the CRRA, auction
houses must determine how much the seller originally paid for the work, ascertain
whether the artist is a citizen of the United States, and locate the artist to arrange the
royalty payment.  Cal. Civ. Code § 986(c)(1).  All of this information must be obtained
through third-parties, and auction houses have no means to verify its accuracy.  (Joint
Motion at 16).  The CRRA thus clouds each art transaction with uncertainty and,
practically speaking, restricts the transfer of artworks contrary to § 109(a).  As
commentators have noted, there are indications that "collectors and auction houses
may have decided to relocate [to states outside California] in order to avoid the burden
imposed by collecting resale royalties."  2 *Nimmer on Copyright*, *supra*, §
8C.04[A][2].  Surely neither the Supreme Court nor Congress intended to permit such
a result, given "the importance of leaving buyers of goods free to compete with each
other when reselling or otherwise disposing of those goods."  *Kirtsaeng*, 133 S. Ct. at
1363.

    But the most significant blow to *Morseburg* comes from the Ninth Circuit's en
banc decision in *Sam Francis*.  The majority rejected *Morseburg*'s premise that the
CRRA "in no way restrict[s] the transfer of art works," *Morseburg*, 621 F.2d at 978, by
holding that the CRRA does, in fact, "facially regulate[] . . . commercial
transaction[s]" between resellers and buyers.  *Sam Francis*, 784 F.3d at 1324.  Unlike
*Morseburg*, the panel was not persuaded that the CRRA constitutes a mere "regulation
of [sale] proceeds" similar to "state-imposed taxes"; instead the court concluded that
the state law restricts "conduct among private parties."  *Id.* at 1324 & n. 1.  Judge
Berzon's concurrence took issue with that conclusion, stating that it was not so clear
"that the royalty obligations the Act imposes on California sellers similarly regulate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case Nos. CV-11-08604-MWF-FFM                Date:  April 11, 2016
                CV-11-08605-MWF-FFM
                CV-11-08622-MWF-PLA
Title:      Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

commercial ***transactions***, as opposed to the post-sale income of California residents."
*Id*. at 1334 (emphasis in original).  But since the majority explicitly determined
otherwise, *Morseburg*'s holding that the CRRA does not restrict commercial transfers
of art no longer holds true.  Indeed, if the CRRA ***does*** regulate downstream sales of art,
as *Sam Francis* determined, then the law necessarily conflicts with the first sale
doctrine.  *Morseburg*'s reasoning, therefore, is neither binding nor persuasive.

        The Court's conclusion is consistent with settled law permitting district courts
and three-judge panels to disregard circuit precedent that is irreconcilable with later
decisions of either the Supreme Court or the Ninth Circuit sitting en banc.  *See Miller
v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003).  In *Miller*, an en banc panel of the Ninth
Circuit considered whether two social workers were absolutely immune from liability
for placing a foster teenager with a family without disclosing the teenager's abusive
tendencies.  335 F.3d at 893.  The placement occurred in connection with child-
dependency proceedings and was ratified by a juvenile court order.  *Id.*  The three-
judge panel concluded that absolute immunity shielded the social workers under
*Babcock v. Tyler*, 884 F.2d 497 (9th Cir. 1989)—a seemingly binding case that held,
on materially identical facts, that placement decisions deserved protection because they
were directly connected to dependency proceedings and required social workers to
exercise independent judgment.  *Id.* at 896.

         But the en banc court determined that the three-judge panel should not have felt
bound by *Babcock*'s holding in light of two intervening decisions from the Supreme
Court:  *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993) and *Kalina v. Fletcher*,
522 U.S. 118 (1997).  Neither *Antoine* nor *Kalina*, however, had anything to do with
social workers; rather, those decisions simply reiterated that state officials are entitled
to absolute immunity only when their duties are functionally comparable to those
exercised by judges, prosecutors, trial witnesses, and jurors at common law.  *See
Antoine*, 508 U.S. at 436 ("When judicial immunity is extended to officials other than
judges, it is because their judgments are functionally comparable to those of judges—

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**                **Date:  April 11, 2016**
                       CV-11-08605-MWF-FFM
                       CV-11-08622-MWF-PLA
Title:       Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

that is, because they, too, exercise discretionary judgment as part of their function.")
(internal quotation marks and alterations omitted); *Kalina*, 522 U.S. at 131 (holding
that a prosecutor does not perform "traditional functions of an advocate" that are
protected under absolute immunity when she signs an affidavit supporting probable
cause for arrest).  Nonetheless, the en banc panel found that the Supreme Court's
functional view of absolute immunity was "clearly irreconcilable" with *Babcock*'s
more formalistic pronouncement that social workers' placement decisions enjoyed
absolute immunity because they were part and parcel of dependency proceedings.
*Miller*, 335 at 897-98.  The en banc panel, therefore, explicitly rejected the notion that
a three-judge panel (and by implication the district court) was obliged to follow the
prior precedent.  *See id.* at 902 (O'Scannlain, J., concurring in part, disagreed with the
majority that the intervening precedent had sufficiently undermined *Babcock*).

        The intervening precedent here undercut *Morseburg* in more obvious ways than
*Antoine* and *Kalina* undercut *Babcock*.  While *Babcock* at least recognized the
functional nature of absolute immunity, 884 F.2d at 502, *Morseburg* barely even
mentioned the purpose of the first sale doctrine and its intended effect on resales of
copyrighted products.  It did not consider that "the whole point of the first sale doctrine
is that once the copyright owner places a copyrighted item in the stream of commerce
by selling it, he has exhausted his exclusive statutory right to control its distribution,"
*Quality King*, 523 U.S. at 137; or that permitting copyright holders to exercise
downstream control would work a "dramatic change" in copyright law, *Kirtsaeng*, 133
S. Ct. at 1366; or that these principles "conclusively reaffirm[] that copyright holders
cannot use their rights to fix resale prices in the downstream market," *Omega S.A..*,
776 F.3d at 695.  And most important of all, *Morseburg* was simply wrong in
characterizing the CRRA as a regulation of proceeds and resellers' income, rather than
a restriction on downstream transactions.  *Sam Francis, 784* F.3d at 1324.  Therefore,
just like the three-judge panel in *Miller* was not bound by *Babcock*, the Court is not
bound by *Morseburg* in reaching its decision.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**          **Date:  April 11, 2016**
                    CV-11-08605-MWF-FFM
                    CV-11-08622-MWF-PLA
Title:        Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

        In sum, the Court concludes that the CRRA stands as an obstacle to § 109(a).
The Court's holding is by no means a comment on the social utility of the CRRA,
which could well benefit the fine arts by encouraging up-and-coming artists to
disseminate their work.  That decision, of course, is for the California Legislature.  But
it is a fundamental tenet of federalism that a conflict between Congress and a state
legislature is resolved in favor of Congress.  U.S. Const., Art. VI, cl. 2.  Because the
CRRA disrupts Congress's efforts to balance the interests of copyright holders and
downstream consumers, it must be preempted.

## 2.    Express Preemption

        Even assuming that *Morseburg* precludes the finding of conflict preemption, no
binding authority has considered the preemptive effect of 17 U.S.C. § 301(a) on the
CRRA.  *Morseburg*, 621 F.2d at 975 ("We do not consider the extent to which the
1976 Act, particularly section 301(a) and (b), 17 U.S.C. § 301(a) and (b), may have
preempted the California Act.").  Section 301(a) contains the express-preemption
clause of the Copyright Act, which reads as follows:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive
> rights within the general scope of copyright as specified by section 106
> . . .  are governed exclusively by this title. . . . [N]o person is entitled to
> any such right or equivalent right in any such work under the common law
> or statutes of any State.

17 U.S.C. § 301(a).

        Express preemption under § 301(a) involves a two-part analysis.  The Court
must first "determine whether the 'subject matter' of the state law claim falls within
the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103."  *Laws v.
Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006) (holding that § 301(a)
preempted state-law right of publicity claims premised on an unlawful use of a

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**               **Date:  April 11, 2016**
                    CV-11-08605-MWF-FFM
                    CV-11-08622-MWF-PLA
Title:     Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

copyrighted musical record in another composition).  And if it does, the Court must assess "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders."  *Id.*  To survive preemption, the "'state claim must have an extra element which changes the nature of action.'"  *Id.* at 1144 (quoting *Del Madera Props. v. Rhodes & Gardner*, 820 F.2d 973, 977 (9th Cir.1987)).  Courts "take a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim."  *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) (holding that § 301(a) preempted an unjust enrichment claim based on the defendant's adaptation of a copyrighted screenplay and book into a motion picture).  That the claim has additional elements does not save it from preemption as long as it is, in essence, a copyright claim.  *Laws*, 448 F.3d at 1144 ("Although the elements of Laws's state law claims [for violations of the right of publicity] may not be identical to the elements in a copyright action, the underlying nature of Laws's state law claims is part and parcel of a copyright claim.").

Plaintiffs do not dispute that the first prong of the test is satisfied here because works of "fine art" constitute "pictorial, graphic, [or] sculptural works" under § 102.  Any claims under the CRRA, therefore, fall comfortably "within the subject matter" of the Copyright Act.  *Laws*, 448 F.3d at 1137.

As to the second prong, the Court agrees with Defendants that the CRRA does no more than broaden the distribution rights granted under the Copyright Act.  By requiring sellers to remit royalties to the copyright holders, the CRRA fills the gap that Congress intentionally left open in § 109.  The CRRA thus creates garden-variety copyright claims premised on a violation of the artists' rights in the distribution of their artwork.  As leading treatises explain, these circumstances lead to the inescapable conclusion that the CRRA is preempted:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case Nos. CV-11-08604-MWF-FFM                Date:  April 11, 2016
          CV-11-08605-MWF-FFM
          CV-11-08622-MWF-PLA
Title:    Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

> The California Resale Royalties Act . . . is designed precisely to inhibit
> the privilege to distribute those works of authorship to which it pertains.
> . . . The right under state law is broader than the comparable federal right
> in that after a "first sale" the distribution right under the Copyright Act
> does not inhibit resales, whereas resales under state law entitle the artist to
> be paid a royalty.  But broader or narrower, it is the same conduct in
> relation to the same subject matter that triggers either rights or immunities
> under both federal and state law.  It would seem to follow necessarily that
> the state law is preempted [under § 301(a)].

2 *Nimmer on Copyright*, *supra*, § 8C.04[A][1].

Plaintiffs' make three arguments to the contrary, but none is persuasive:

*First*, Plaintiffs repeat their contention that "the CRRA operates only on the money earned in a sale of artwork, not on copying, not on distribution and not on the sale itself."  (Opposition to Joint Motion at 14).  As already explained, the en banc panel in *Sam Francis* addressed and rejected this contention, stating that the CRRA's "regulation of the conduct of the seller and the seller's agent is neither 'minor' nor a 'regulation of the proceeds' alone."  784 F.3d at 1324 & n.1.  Contrary to Plaintiffs' contention at the hearing, the panel's comments were not mere observations that the CRRA also requires resellers to locate and pay the original artists.  Instead, the panel was expressing its concern—a concern that permeates the opinion—that the CRRA regulates transactions, as opposed to income of the resellers.  *Id.* at 1324-26.

*Second*, Plaintiffs quote *Morseburg* for the proposition that the CRRA creates an "additional right" that is not afforded by the Copyright Act.  (Opposition to Joint Motion at 14); *Morseburg*, 621 F.2d at 977.  The Court readily agrees that copyright holders have no federal right to downstream royalties.  But Plaintiffs are mistaken in assuming that the absence of such rights in the Copyright Act makes the CRRA claim

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**               **Date:  April 11, 2016**
             CV-11-08605-MWF-FFM
             CV-11-08622-MWF-PLA

Title:       Estate of Robert Graham, et al. *-v-* Sotheby's, Inc.

qualitatively different from a copyright claim.  While *Morseburg* explicitly declined to
address this question, it is clear that the state law can be preempted even if it is not
coextensive with the Copyright Act.  As is evident from the House Report on the
Copyright Act of 1976, preemption of state law occurs "even though the scope of
exclusive rights given under the [Copyright Act] is narrower than the scope of [rights
under state law]."  H.R. Rep. 94-1476, pt. 3, at 131 (1976).  If a state law, like the
CRRA, creates a copyright claim that Congress explicitly declined to create, it may be
preempted under § 301(a).  2 *Nimmer on Copyright*, *supra*, § 8C.04[A][1] ("If state
law creates a right that inhibits the reproduction, performance, distribution or display
of a 'work of authorship,' it is a right 'equivalent' to copyright, and therefore
preempted, even if the state created right is either broader or narrower than the
comparable right under the Copyright Act."); *see Omega S.A.,* 776 F.3d at 695
(holding that the Copyright Act not only governs, but also forbids, efforts to control
downstream sales).

     ***Third***, Plaintiffs urge the Court to follow *Baby Moose Drawings, Inc. v.
Valentine*, in which the district court (Judge Nguyen) concluded that the CRRA was
not completely preempted under § 301(a) for the purposes of removal jurisdiction.  No.
2:11-CV-00697-JHN, 2011 WL 1258529, at *3 (C.D. Cal. Apr. 1, 2011).  Because
complete preemption is a narrower doctrine than conflict or express preemption, *Baby
Moose* is not controlling.  *K2 Am. Corp. v. Roland Oil & Gas, LLC,* 653 F.3d 1024,
1029 (9th Cir. 2011) ("The general rule is that a defense of federal preemption of a
state-law claim, even conflict preemption under [a federal statute], is an insufficient
basis for original federal question jurisdiction under § 1331(a) and removal jurisdiction
under § 1441(a).") (internal quotations and citations omitted).  Even the district court
acknowledged as much when it stated at a hearing in these actions that *Baby Moose* "is
limited [to] a remand situation."  (Motion Hearing Transcript at 27 (No. 11-8604: 39)).

     Plaintiffs are nonetheless correct that *Baby Moose*'s conclusion—that the "5%
royalty right on resale amounts to artists is qualitatively different from the rights

---

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM                 Date:  April 11, 2016**
             CV-11-08605-MWF-FFM
             CV-11-08622-MWF-PLA
Title:      Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

granted to copyright holders under the Copyright Act"—could apply with equal force
to express preemption.  2011 WL 1258529, at \*3.  But *Baby Moose* did not consider
the CRRA's relation to the first sale doctrine and the authority discussed above.
Instead, it relied on the legislative history of the Visual Artists Rights Act of 1990
("VARA"), which amended some portions of the Copyright Act.  *Id.*  In passing the
VARA, the House of Representatives indicated the following:

> [T]he new Federal law will not preempt State causes of action relating to
> works that are not covered by the law, such as audiovisual works,
> photographs produced for non-exhibition purposes, and works in which
> the copyright has been transferred before the effective date.  Similarly,
> State artists' rights laws that grant rights not equivalent to those accorded
> under the proposed law are not preempted, even when they relate to works
> covered by [the bill].  For example, ***the law will not preempt a cause of
> action for a misattribution of a reproduction of a work of visual art or
> for a violation of a right to a resale royalty.***

H.R. Rep. No. 101-514, at 20 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6915, 6931
(emphasis added).

At the hearing, Plaintiffs urged the Court to follow *Baby Moose* in holding that
the VARA's legislative history controls the question of preemption under § 301(a), the
provision at issue in this action.  But in enacting the VARA, Congress neither
addressed nor amended § 301(a).  Instead, Congress chose to create a separate
preemption section—§ 301(f)— applicable to the subject matter covered under the
VARA.  At most, therefore, the excerpt quoted above constitutes a post-enactment
interpretation of § 301(a).  And as the Supreme Court has emphasized,

> Post-enactment legislative history (a contradiction in terms) is not a
> legitimate tool of statutory interpretation.  Real (pre-enactment) legislative

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**              **Date:  April 11, 2016**
CV-11-08605-MWF-FFM
CV-11-08622-MWF-PLA

Title:      Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

history is persuasive to some because it is thought to shed light on what
legislators understood an ambiguous statutory text to mean when they
voted to enact it into law.  But post-enactment legislative history by
definition could have had no effect on the congressional vote.

*Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011) (citations and quotation marks
omitted) (holding that the National Childhood Vaccine Injury Act preempted state-law
design-defect claims against vaccine manufacturers).

The Court is therefore unpersuaded that the VARA's legislative history
precludes preemption of the CRRA under § 301(a).  As the Court already explained,
Congress, in passing the original Copyright Act of 1976, contemplated that § 301(a)
would preempt state laws expanding rights that it did not wish to be expanded.
H.R. Rep. 94-1476, pt. 3, at 131.  Because the CRRA does exactly that, it falls within
the preemptive scope of § 301(a).

In sum, the Court concludes that the CRRA is preempted under § 301(a),
whether or not *Morseburg* is still binding precedent.

**3.     Conclusion**

Accordingly, the Joint Motion is **GRANTED** as to Plaintiffs' claims for
violations of the CRRA.  Because Plaintiffs' only remaining claims are asserted under
California's unfair competition law, and are derivative of those brought under the
CRRA, no viable claims remain in these actions.

The Court acknowledges that the preemption issue is a close one.  Although the
same issue was presented to the district court on the previous round of Motions to
Dismiss, the district court evidently believed that the Motions could be granted in full
on more straightforward grounds under the Commerce Clause or that *Morseburg*
disposed of the preemption argument.  The Court's preemption ruling is regrettable

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**                    **Date:  April 11, 2016**
              CV-11-08605-MWF-FFM
              CV-11-08622-MWF-PLA

Title:       Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

both in that (1) it will likely result in a second trip to the Ninth Circuit; and (2) the actions are now dismissed on a statutory basis, which ideally should have preceded the constitutional basis.  However, it is only with the benefit of the Ninth Circuit's decision in *Sam Francis* and the parties' further briefing that the Court feels comfortable concluding that the CRRA is preempted.

Although the Court's holding moots all remaining contentions, it nonetheless reaches the merits of those contentions to complete the record and avoid piecemeal appeals to the Ninth Circuit.

###     B.     Takings under the Fifth Amendment

The Fifth Amendment prohibits a taking of "private property . . . for public use, without just compensation."   U.S. Const. amend. V; *see also Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1198 (9th Cir. 1998) ("[T]he Takings Clause has long been held to apply to the States through the Due Process Clause of the Fourteenth Amendment.").  "In order to state a claim under the Takings Clause, a plaintiff must first demonstrate that he possesses a 'property interest' that is constitutionally protected." *Schneider*, 151 F.3d at 1198.  If such an interest does exist, the next step is to "determine whether the expropriation of that interest constitutes a 'taking' within the meaning of the Fifth Amendment." *Id.*

###     1.     Defendants' Standing

As a preliminary matter, the Court must address whether Defendants have standing to assert a takings defense to Plaintiffs' claims.  The royalties at issue, Plaintiffs argue, are assessed not against Defendants but against the sellers Defendants represent.  (Opposition to Joint Motion at 17).  Indeed, Defendants never held title to the underlying art and, at most, acted as agents for their clients in effecting sales.  (*Id.*).  But while Plaintiffs' argument is compelling on its face, it must be rejected under controlling Ninth Circuit precedent and established standing principles.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**              **Date:  April 11, 2016**
    CV-11-08605-MWF-FFM
    CV-11-08622-MWF-PLA
Title:  Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

   The Ninth Circuit considered a similar argument in *Horne v. U.S. Dept. of Agriculture*, 750 F.3d 1128 (9th Cir. 2014), *rev'd on other grounds*, 135 S. Ct. 2419 (2015).  The plaintiffs there sold both the raisins they produced as well as the raisins produced by other owners.  *Id.* at 1134.  As raisin sellers, the plaintiffs were obligated to comply with the government's "reserve requirement," which mandated that a certain percentage of the overall crop be handed over to the Department of Agriculture in order to stabilize the raisin market.  *Id.* at 1133.  After the plaintiffs refused to comply, the government imposed a substantial penalty, which, in the plaintiffs' view, violated the Takings Clause.  *Id.* at 1133-36.

   The government argued that the plaintiffs lacked standing "to challenge the portion of the penalty attributable to the sale of any raisins produced by third-party firms" because the plaintiffs "never owned [those] raisins."  *Id.* at 1336.  The Ninth Circuit disagreed.  The relevant inquiry, the panel explained, was whether the plaintiffs could contest not a hypothetical seizure of third-party raisins but the imposed penalty.  *Id.*  And a monetary penalty, of course, is "an actual, concrete, and particularized injury-in-fact" that satisfies "the *Lujan* requirements."  *Id.*; *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (holding that the standing analysis consists of three elements:  (1) a "concrete and particularized" injury; (2) "a causal connection between the injury and the conduct complained of"; and (3) a fair likelihood "that the injury will be redressed by a favorable decision").  The Ninth Circuit thus held that the plaintiffs had standing to challenge the government's penalty.  *Horne*, 750 F.3d at 1336.

   The same reasoning applies here.  Although Defendants could not have challenged a seizure of the sellers' artwork, they have standing to contest the validity of the royalties Plaintiffs seek to recover from Defendants.  The injury that would result from the imposition of those royalties is patently sufficient to confer standing.  Under *Horne*, therefore, Defendants may assert a Takings Clause defense.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**                **Date:  April 11, 2016**
             CV-11-08605-MWF-FFM
             CV-11-08622-MWF-PLA
Title:      Estate of Robert Graham, et al. -*v-* Sotheby's, Inc.

## 2.      Existence of a Protected Property Interest

"Because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law."  *Phillips v. Washington Legal Found*., 524 U.S. 156, 164 (1998) (internal quotation marks and citations omitted).  Generally speaking, California courts define property broadly. *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003) ("Property is a broad concept that includes 'every intangible benefit and prerogative susceptible of possession or disposition.'") (quoting *Downing v. Mun. Court*, 88 Cal.App.2d 345, 350, 198 P.2d 923 (1948)).  The definition encompasses both personal and real property, including monetary interests.  *Horne v. Dep't of Agriculture*, 135 S. Ct. 2419, 2426 (2015) (stating that the Takings Clause "protects 'private property' without any distinction between different types").

 Applying these principles, Defendants conclude that the CRRA infringes on the resellers' property interests.  (Joint Motion at 25).  Since a work of fine art "indisputably is protected private property," Defendants reason, the owner "enjoys all of the rights of ownership, including . . . the right to dispose of it."  (*Id.*); *see also Phillips*, 524 U.S. at 167 ("[T]he owner of a property interest may dispose of all or part of [the property] as he sees fit.").  And because the CRRA prevents art owners' ability to obtain all proceeds from an art sale, Defendants urge the Court find that the CRRA divests them of constitutionally-protected property interests.  (Joint Motion at 25-27).

But the Court is not convinced.  When the California Legislature enacted the CRRA, it redistributed property rights between artists and resellers by transferring the interest in five percent of downstream sales to the artists.  Consequently, a reseller who purchased fine art after the CRRA's enactment did not and could not have obtained the right to full proceeds from a sale of that art in California.  The CRRA makes clear that the five percent royalty interest is not the reseller's "property" by providing that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**          **Date:  April 11, 2016**
             CV-11-08605-MWF-FFM
             CV-11-08622-MWF-PLA

Title:       Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

"amounts of money held by any seller or agent for the payment of artists pursuant to this section shall be exempt from enforcement of a money judgment by the creditors of the seller or agent."  Cal. Civ. Code § 986(a)(6).  There can therefore be no violation of the Takings Clause because the CRRA infringes neither Defendants' nor their clients' property interests.

The Court, of course, is aware that the states cannot simply redefine traditional property rights to "opt-out" of the Takings Clause.  The Ninth Circuit has explained that "constitutionally protected property rights can—and often do—exist despite [state statutes] that appear to deny their existence."  *Schneider*, 151 F.3d at 1199.  The Supreme Court has reached the same conclusion when it invalidated a Florida statute that vested counties with ownership of the interest accrued on interpleader funds deposited with county courts.  *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162 (1980).  The Supreme Court declared:

> [A] State, by *ipse dixit*, may not transform private property into public property without compensation, even for the limited duration of the deposit in court.  This is the very kind of thing that the Takings Clause of the Fifth Amendment was meant to prevent.  That Clause stands as a shield against the arbitrary use of governmental power.

*Id.* at 164; *see also Phillips*, 524 U.S. at 163 (concluding that the interest earned on client trust funds held by lawyers is a cognizable property right despite a state statute providing otherwise).

But if states cannot escape the Takings Clause by redefining property rights, what property interests are constitutionally protected?  The Ninth Circuit has attempted to provide some clarity, stating, "[T]here is, we think, a 'core' notion of constitutionally protected property into which state regulation simply may not intrude without prompting Takings Clause scrutiny. . . .  [T]he core is defined by reference to

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**          **Date:  April 11, 2016**
              CV-11-08605-MWF-FFM
              CV-11-08622-MWF-PLA

Title:      Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

traditional 'background principles' of property law."  *Schneider*, 151 F.3d at 1201.
Using such traditional, common-law property principles, the Ninth Circuit in *Schneider*
concluded that California inmates possessed a constitutionally cognizable property
right in the interest earned on their money deposited in inmate trust accounts.  *Id.*
("The 'interest follows principal' rule's common law pedigree and near-universal
endorsement by American courts—including California's—leave us with little doubt
that interest income of the sort at issue here is sufficiently fundamental that States may
not appropriate it without implicating the Takings Clause.").

        But contrary to the rights involved in *Webb*, *Phillips*, and *Schneider*, the
CRRA's royalty obligation does not divest resellers of traditional property interests
protected under the Takings Clause.  Unlike a state law that appropriates interest
earned on a specific fund, the CRRA does not create public property out of something
that has been private for hundreds of years.  Instead, the CRRA reallocates property
interests between copyright holders and downstream distributors—a practice that
constitutes the very foundation of intellectual property law.  This type of reallocation
dates as far back as 1710, when the first English copyright statute—the Statute of
Anne—was enacted to protect published books from unauthorized distributions by
limiting the consumers' property interests.  *See Feltner v. Columbia Pictures
Television, Inc.*, 523 U.S. 340, 349 (1998) (discussing history of copyright law).  The
founders of this nation deemed such redistributions of rights so important that they
granted Congress the power to "promote the progress of science and useful arts, by
securing for limited times to authors and inventors the exclusive right to their
respective wrings and discoveries."  U.S. Const., Art. I, § 8.  This "exclusive right"
serves as a significant limitation on the property interests of non-inventors, but it
operates completely outside the Takings Clause.

        When viewed against this background, it becomes apparent that the CRRA does
not inhibit property rights that have traditionally enjoyed constitutional protection.
Instead, the CRRA does what the Copyright Act has done for over a century:  it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**              **Date:  April 11, 2016**
            CV-11-08605-MWF-FFM
            CV-11-08622-MWF-PLA

Title:      Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

transfers certain interests in intellectual property from downstream owners to original artists.  Indeed, Defendants' entire preemption argument, which the Court discussed in detail in the preceding section, is based on the notion that the CRRA creates an "additional exclusive-distribution right" that gives rise to "garden-variety copyright claim[s]."  (Joint Motion at 19).  But no one suggests that Congress's creation of exclusive rights in § 106 somehow triggers Fifth Amendment takings analysis.  If that were the case, the Takings Clause would severely inhibit Congress's regulatory authority under the Copyright Clause, which is plainly not the law.  Assuming, therefore, that rights under the CRRA are equivalent to those under the Copyright Act, then the CRRA too must fall outside the bounds of the Takings Clause.

It could be argued that the Takings Clause prohibits imposition of royalties on the first resale of art that was purchased from the artist prior to the enactment of the CRRA in 1976.  But it is not clear at this early stage of litigation whether any such resales are at issue in this action.  If it turns out in discovery that Defendants did resell Plaintiffs' art that was originally acquired before 1976, the Court will entertain arguments as to whether the Takings Clause precludes Plaintiffs' claims as to those resales.  For now, however, Defendant's facial challenge to the constitutionality of the CRRA is rejected.

In sum, Defendants' clients never possessed property interests in the entire resale value of the artwork they purchased.  California's redistribution of that interest is not an infringement on traditional property rights; instead, it is a valid regulation of intellectual property that has been practiced for hundreds of years.  The CRRA may be preempted, but it is not invalid under the Takings Clause.

### C.    **Plausibility of Plaintiffs' Claims**

Defendants next argue that Plaintiffs have failed state a plausible claim for relief under Rule 8.  (Joint Motion at 38-45).  This argument can be divided into two parts:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**          **Date:  April 11, 2016**
         CV-11-08605-MWF-FFM
         CV-11-08622-MWF-PLA

Title:    Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

---

*First*, Defendants contend that Plaintiffs' claims must be dismissed because they fail to identify specific art sales that gave rise to the royalty requirement under the CRRA.  (*Id.* at 39).  But no authority requires Plaintiffs to list details about every transaction that is at issue in this action.  All that that is necessary is for the Complaints to plausibly allege that Defendants sold Plaintiffs' artwork in California without paying royalties.  The Complaints make those allegations, putting Defendants on notice of the claims at issue in these actions.  (Sotheby's Complaint ¶¶ 9-11; Christie's Complaint ¶¶ 10-12).  That the allegations are made on "information and belief" is of no moment, given Plaintiffs' claims that Defendants concealed critical information about the sales it conducted.  (Sotheby's Complaint ¶ 12; Christie's Complaint ¶ 13).  If a particular Defendant did not sell any artwork Plaintiffs created, it may, as a matter of course, promptly move for summary judgment.

*Second*, Defendants argue that Plaintiffs' claims for sales that occurred more than three years before the filing of these actions are time-barred.  (Joint Motion at 43).  Under the CRRA, artists are required to bring their claims "within three years after the date of sale or one year after the discovery of the sale, whichever is longer."  Cal. Civ. Code § 986(a)(3).  Plaintiffs must thus allege that they could not have discovered the sales that took place before October 2008 in order to state viable claims for royalties as to those transactions.  Contrary to Defendants' contentions, the Complaints' allegations are sufficient in this regard.  Plaintiffs allege that Defendants have concealed information about the sales of Plaintiffs' artwork and provide specific examples of such concealment.  (Sotheby's Complaint ¶ 12; Christie's Complaint ¶ 13).  Defendants' actions, Plaintiffs continue, have "successfully stymied and prevented plaintiffs and class members from reasonably discovering the occurrence of auctions and sales for which a Royalty was due."  (Sotheby's Complaint ¶ 13; Christie's Complaint ¶ 14).  These allegations make it at least plausible that Plaintiffs' claims as to the older sales are not time-barred.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**            **Date:  April 11, 2016**
          CV-11-08605-MWF-FFM
          CV-11-08622-MWF-PLA

Title:      Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

---

The Court understands Defendants' concern that Plaintiffs may be attempting to use this litigation not to develop existing claims but to discover whether they have any claims in the first place.  *See Podany v. Robertson Stephens, Inc.,* 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004) ("[D]iscovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to find out whether he has such a claim.").  But that concern is overstated.  Plaintiffs are not suing some random entities without any evidence of wrongdoing.  Instead, Plaintiffs present sufficient factual allegations to make it at least plausible Defendants sold their art without paying royalties and while concealing information about those sales.  Given that Rule 8 requires not certainty but a low threshold of plausibility, the Court deems Plaintiffs' allegations adequate.

### D.    Punitive Damages

Defendants seek to dismiss Plaintiffs' prayer for punitive damages under the CRRA and California's Unfair Competition Law ("UCL").  (Joint Motion at 32).  Although Plaintiffs argue that the Court cannot consider Defendants' arguments on a motion to dismiss under Rule 12(b)(6), numerous courts have done so.  *See Danielson v. Wells Fargo Bank*, No. CV-11-5927 PSG-PLAx, 2011 WL 4480849, at *3 (C.D. Cal. Sept. 26, 2011) ("The Ninth Circuit has implicitly authorized the use of a 12(b)(6) motion to challenge a prayer for damages precluded by law.") (citing *Whittlestone, Inc. v. Handi–Craft Co.,* 618 F.3d 970, 974 (9th Cir.2010) (rejecting the use of a Rule 12(f) motion to strike damages precluded by law because the Rule 12(f) motion was "really an attempt to have certain portions of [the] Complaint dismissed," and, "a rule 12(b)(6) motion . . . already serves such purpose")); *Delgado v. Nationstar Mortgage LLC*, No. 2:14-CV-02547-ODW, 2014 WL 2115218, at *7 (C.D. Cal. May 21, 2014) ("[A] court must evaluate damages allegation under Rule 12(b)(6)" and not Rule 12(f)).  The Court sees no compelling reason to leave this issue for another day if it can be easily decided now.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case Nos. CV-11-08604-MWF-FFM              Date:  April 11, 2016
             CV-11-08605-MWF-FFM
             CV-11-08622-MWF-PLA
Title:      Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

Nothing on the face of the CRRA permits punitive damages. *See* Cal. Civ. Code § 986(a). Nor is Civil Code section 3294—California's catch-all punitive damages provision—applicable to this action. As courts have explained, "Where a right is created by statute and the statute does not expressly permit punitive damages, punitive damages under California Civil Code section 3294 are not available." *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 620 (N.D. Cal. 2007); *see Bickley v. Schneider Nat., Inc.*, No. C08-05806JSW, 2009 WL 5841196, at *1 (N.D. Cal. Feb. 11, 2009) (same, collecting cases); *Turnbull & Turnbull v. ARA Transp., Inc.*, 219 Cal.App.3d 811, 826-27, 268 Cal. Rptr. 856 (1990) (stating, "when a new right . . . is created by statute and a statutory remedy for the infringement thereof is provided, such remedy is exclusive of all others"). And although Plaintiffs cite cases that have applied section 3294 to California statutes containing no punitive damages provisions, those decisions are inapposite because the statutes they examined "embodie[d] a right whose common law analogue would have supported a cause of action for which punitive damages were recoverable." *Brewer v. Premier Golf Properties*, 168 Cal. App. 4th 1243, 1255, 86 Cal. Rptr. 3d 225 (2008) (holding that claims under California Labor Code provisions governing meal and rest breaks could not seek punitive damages under section 3294). Here, conversely, there is no common law analogue to the CRRA. Punitive damages are therefore unavailable.

As to the UCL, it is well established that the remedies under the statute are limited "to injunctive relief and restitution." *Clark v. Superior Court*, 50 Cal. 4th 605, 610, 112 Cal. Rptr. 3d 876 (2010) (stating that a plaintiff may not seek damages under the UCL). No damages, much less punitive damages, are therefore recoverable on Plaintiffs' derivative claims.

Accordingly, the Joint Motion is **GRANTED** *without leave to amend* as to Plaintiffs' prayer for punitive damages.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**            **Date:  April 11, 2016**
           CV-11-08605-MWF-FFM
           CV-11-08622-MWF-PLA

Title:       Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

### E.      The Claims of the Estate of Robert Graham

The claims of the Estate of Robert Graham must be dismissed, Defendants argue, because an "estate" has no capacity to sue.  The Court agrees.  *See Estate of Migliaccio v. Midland Nat'l. Life Ins. Co.*, 436 F. Supp. 2d 1095, 1100 (C.D. Cal. 2006) ("[A]n estate or trust is not a legal entity and has no capacity to sue.  Title to an estate or trust assets is held by an executor, administrator or trustee, on behalf of beneficiaries.  Thus, as to claims held by an estate or trust, the executor, administrator, or trustee is the real party in interest.") (quotation marks and citations omitted); *Smith v. Cimmet*, 199 Cal. App. 4th 1381, 1390, 132 Cal. Rptr. 3d 276 (2011) ("A probate or trust estate is not a legal entity; it is simply a collection of assets and liabilities.  As such, it has no capacity to sue or be sued, or to defend an action.").  An individual, such as an executor, must appear on behalf of the Estate of Robert Graham to prosecute its claims.

Accordingly, the Joint Motion is **GRANTED** ***with leave to amend*** as to claims asserted by the Estate of Robert Graham.

## III.   SOTHEBY'S MOTION

Defendant Sotheby's brings jurisdictional challenges to the Complaint on three grounds:  (1) Plaintiffs do not have Article III standing because they have not alleged sufficient facts to establish an injury; (2) Defendant Sotheby's never sold any artwork by two of the three Plaintiffs; and (3) the only Plaintiff whose artwork Defendant Sotheby's did sell is time-barred from asserting his claims because the transaction took place in 1981 at a public auction.  (Sotheby's Motion at 1-5).

As all recognize, if "the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  A jurisdictional attack under Rule 12(b)(1) may be "facial or factual."  *Safe Air for*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case Nos. CV-11-08604-MWF-FFM**                    **Date:  April 11, 2016**
                    CV-11-08605-MWF-FFM
                    CV-11-08622-MWF-PLA
Title:      Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

---

*Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, the complaint's allegations must be accepted as true.  *Id.*  "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Id.*  "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Id.*  And the allegations, of course, need not be presumed as true.  *Id.*

As to Defendant Sotheby's facial attack, the Court already explained that Plaintiffs have alleged plausible claims for relief.  The Complaints expressly state that Defendants have sold Plaintiffs' artwork without paying them royalties due under the CRRA.  (Sotheby's Complaint ¶¶ 9-11; Christie's Complaint ¶¶ 10-12).  These allegations patently establish Article III injury.  Contrary to Defendant Sotheby's suggestion, no pleading of specific sales is required under Rule 8, especially since Plaintiffs allege that Defendants have prevented them from discovering the existence of those sales.

As to the factual challenge, Defendant Sotheby's arguments are so intertwined with the merits of the dispute that they are better addressed on a motion for summary judgment.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1040 (9th Cir. 2004) (holding that jurisdictional issues going to the merits of the plaintiff's claim were inappropriate for resolution under Rule 12(b)(1));  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) ("The relatively expansive standards of a 12(b)(1) motion are not appropriate for determining jurisdiction in a case like this, where issues of jurisdiction and substance are intertwined.").  Defendant Sotheby's argues, in essence, that Plaintiffs cannot satisfy all elements of their claims because evidence shows that their works have not been sold at public auctions (or, in the case of one Plaintiff, that he is time-barred from bringing his claims because he was on notice of the public sale).  But these arguments are inappropriate at this stage of the litigation because they go to the heart of the dispute:  whether Defendants violated Plaintiffs' rights under the

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**          **Date:  April 11, 2016**
               CV-11-08605-MWF-FFM
               CV-11-08622-MWF-PLA
Title:      Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

CRRA by selling their artwork while concealing those sales.  Defendant Sotheby's asks the Court to decide the dispute on one-sided evidence without permitting Plaintiffs to conduct any discovery.  The Court declines to do so.

Accordingly, Defendant Sotheby's separate Motion as such is **DENIED.**

## IV.   **EBAY'S MOTION**

Defendant eBay seeks dismissal for an independent reason:  it is not a proper defendant under the CRRA.  (eBay Motion at 8).

As Defendant eBay rightly notes, the CRRA imposes the royalty requirement only on "the seller or the seller's agent."  Cal. Civ. Code § 986(a) (stating that "seller or the seller's agent shall pay . . . 5 percent of the amount of such sale" and that when "a work of fine art is sold at an auction or by a gallery, dealer, broker, museum, or other person acting as the agent for the seller, ***the agent*** shall withhold 5 percent of the amount of the sale") (emphasis added).  The Court takes judicial notice of Defendant eBay's website and its operation.  *See, e.g.*, *Hendrickson v. eBay Inc.*, 165 F. Supp. 2d 1082, 1084 n.2 (C.D. Cal. 2001) (noting how eBay's website works and holding that, "[t]o the extent some of the descriptions about eBay's website are not in the record, the Court takes judicial notice of www.eBay.com and the information contained therein pursuant to Federal Rule of Evidence 201"); *Action Tapes, Inc. v. Weaver*, No. Civ. 3:05-CV-1693-H, 2005 WL 3199706, at *2 & n.2 (N.D. Tex. Nov. 23, 2005) (holding that eBay's website "is, after almost a decade in existence, now a matter of common knowledge of which the Court takes judicial notice"); *Missing Link, Inc. v. eBay, Inc.*, No. C-07-04487 RMW, 2008 WL1994886, at *4–7 (N.D. Cal. May 5, 2008) (considering and taking judicial notice of eBay's User Agreement); *Noll v. eBay, Inc.*, 282 F.R.D. 462, 463 n.1, 466 (N.D. Cal. 2012) (same); *Rosado v. eBay Inc.*, 53 F. Supp. 3d 1256, 1260 n.1 (N.D. Cal. 2014) (same).  As even a cursory examination of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**                    **Date:  April 11, 2016**
          CV-11-08605-MWF-FFM
          CV-11-08622-MWF-PLA
Title:     Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

www.ebay.com demonstrates, Defendant operates neither as a seller nor as an agent for
those who sell goods on its platform.

        It is virtually common knowledge that Defendant eBay is not a seller of goods.
The Second Circuit has described Defendant eBay as follows:

> eBay is the proprietor of www.ebay.com, an Internet-based marketplace
> that allows those who register with it to purchase goods from and sell
> goods to one another.  It connects buyers and sellers and enables
> transactions, which are carried out directly between eBay members.  In its
> auction and listing services, it provides the venue for the sale of goods and
> support for the transactions, but it does not itself sell the items listed for
> sale on the site nor does it ever take physical possession of them.

*Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 96-97 (2d Cir. 2010) (alterations and
quotation marks omitted); *see also Butler v. eBay, Inc.*, No. 5:06-cv-02704-JW (N.D.
Cal. 12, 2006) ("[T]he seller is in control of the sale, not eBay . . . . Thus, the sale
transaction is between the seller and the bidder."). Even the California Attorney
General rejected any suggestion that eBay is a "seller," stating, "We have little doubt
that eBay does not sell or offer to sell or buy or offer to buy, on behalf of another or
others, any of the items."  Cal. Att'y Gen. Op. No. 02-111 (2003), *available at*
http://www.dbw.ca.gov/YNS/AGEBay.aspx.  As this authority demonstrates, it is
highly implausible, to put it mildly, that Defendant eBay holds title to the goods
offered for sale on its platform.  Cal. Com. Code § 2103(1) (defining a "sale" as "the
passing of title from the seller to the buyer for a price).

        For similar reasons, it is equally implausible that Defendant eBay acts as an
agent for sellers of goods.  As Judge Reinhardt noted in *Sam Francis*, Defendant eBay
"is not an 'agent' within the meaning of the [CRRA] and is therefore not subject to the
Act." *Sam Francis Found.*, 784 F.3d at 1327 & n.3 (Reinhardt, J., concurring in part

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**              **Date:  April 11, 2016**
          CV-11-08605-MWF-FFM
          CV-11-08622-MWF-PLA
Title:    Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

and dissenting in part).  That observation was not challenged by any other members of the en banc panel for an obvious reason:  Defendant eBay is a ***platform*** that permits sellers and buyers to interact with one another—not an agent.  The California Attorney General reached the same conclusion, stating:

> eBay does not act as an "agent for either the seller or buyer" . . . . eBay does not sell or offer to sell or buy or offer to buy, on behalf of another or others, any of the items . . . listed on its website.  Rather, sellers and buyers, not eBay, initiate and directly control the selling and buying process.

Cal. Att'y Gen. Op. No. 02-111.  This observation appears correct.  It is implausible that Defendant eBay could, for example, enter into binding contracts on behalf of an art seller, or that the art seller could "exercise control" over Defendant eBay. *Palomares v. Bear Stearns Residential Mortgage Corp.*, No. 07-CV-01899-WQH-BLM, 2008 WL 686683, at *4 (S.D. Cal. Mar. 13, 2008) ("To allege an agency relationship, a plaintiff must allege:  (1) that the agent or apparent agent holds power to alter legal relations between principal and third persons and between principal and himself; (2) that the agent is a fiduciary with respect to matters within scope of agency; and (3) that the principal has right to control conduct of agent with respect to matters entrusted to him.").  It is the seller himself who would close the transaction, using online tools that Defendant eBay provides.

Accordingly, eBay's Motion on this point is **GRANTED *with leave to amend***, although the Court strongly questions whether any successful amendment is possible that would be consistent with the Court's reasoning.  To successfully assert claims under the CRRA against Defendant eBay, Plaintiffs must offer at least some facts supporting their conclusory allegations that Defendant eBay "sold works of Fine Art" and "acted as an agent on behalf of California sellers" (eBay Complaint ¶¶ 11).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case Nos. CV-11-08604-MWF-FFM**          **Date:  April 11, 2016**
          CV-11-08605-MWF-FFM
          CV-11-08622-MWF-PLA

Title:     Estate of Robert Graham, et al. -*v*- Sotheby's, Inc.

## V.     **CONCLUSION**

For the foregoing reasons, the Joint Motion is **GRANTED** ***without leave to amend*** as to preemption and Plaintiffs' prayer for punitive damages, and ***with leave to amend*** as to the claims asserted by the Estate of Robert Graham.  The Joint Motion is **DENIED** in all other respects.

The eBay Motion is **GRANTED** ***without leave to amend*** as to preemption and ***with leave to amend*** as to its claim that Defendant eBay is not a proper Defendant under the CRRA.  The eBay Motion is **DENIED** in all other respects.

The Sotheby's Motion is **DENIED**.

This Order shall constitute notice of entry of judgment under the Federal Rule of Civil Procedure 58.  Pursuant to Local Rule 58-6, the Court **ORDERS** the Clerk to treat this Order, and its entry on the docket, as an entry of judgment.

IT IS SO ORDERED.